<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

```
DOUGLAS L. WATFORD,            :
                              :    Civil Action No. 09-6111 (NLH)
              Plaintiff,       :
                              :
         v.                    :    OPINION
                              :
MILLVILLE POLICE DEPARTMENT,   :
et al.,                        :
                              :
              Defendants.      :
```

**APPEARANCES:**

Plaintiff <u>pro se</u>
Douglas L. Watford
Southern State Correctional Facility
P.O. Box 150
Delmont, NJ 08314

**HILLMAN**, District Judge

Plaintiff Douglas L. Watford, a prisoner confined at

Southern State Correctional Facility, seeks to bring this action

<u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging

violations of his constitutional rights.  Based on his affidavit

of indigence and the absence of three qualifying dismissals

within 28 U.S.C. §1915(g), the Court will grant Plaintiff's

application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C.

§ 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to

determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Amended Complaint and are accepted as true for purposes of this review.[1]

Plaintiff alleges that on November 19, 2009, at approximately 12:30 a.m., Defendant Sergeant John Doe and Defendant Officers John Does I through 10 arrived at the home of Deborah Suggs, at 1 East Foundry Street, Millville, New Jersey, where Plaintiff also resided.   Plaintiff alleges that the officers entered the home without a warrant or consent.

Plaintiff alleges that the officers, with weapons drawn, proceeded to the second floor of the house, entered the bedroom, and arrested Plaintiff.   Plaintiff alleges that he did not resist arrest.[2]   Plaintiff alleges that the officers stepped on his back and then, after Plaintiff was handcuffed, "started brutally kicking and punching plaintiff in his face, head, back, neck and side."   (Amended Complaint, ¶ 19.e.)   Plaintiff alleges that the

---

[1] On June 4, 2010, this Court received Plaintiff's Motion [5] to amend his Complaint.  This motion will be granted, and the amended complaint attached to the motion will be deemed filed.

[2] The Court notes that the New Jersey Department of Corrections Inmate Locator reflects that Plaintiff was convicted of resisting arrest on November 19, 2009, and was sentenced to a 3-year term of confinement on May 3, 2010.

officers then took him to one of their police cars and then "viciously slammed plaintiff's face into the trunk of the police car."  (Amended Complaint, ¶ 20.b.)

Plaintiff alleges that he was then taken to Millville police station, where he was left in a holding cell, without medical care, for approximately five hours.  At approximately 5:30 a.m., the same officers took Plaintiff to the Defendant South Jersey Healthcare Regional Medical Center, where it was determined that Plaintiff had suffered a broken nose in two places, a concussion, back injuries, and shoulder injuries.  Plaintiff alleges that Defendant South Jersey Healthcare Regional Medical Center refused to treat Plaintiff's injuries.

Plaintiff alleges that at approximately 7:00 a.m. the same day he was taken to Defendant Cumberland County Jail.  Plaintiff alleges that, while at Cumberland County Jail, his injuries were not treated until December 4, 2009.  Plaintiff alleges that on December 4, 2009, he was examined by Drs. Brian M. Smith, Dexter Barber, Joseph P. Mulligan, and Manolis G. Manolakakis, all of whom are named as defendants here.  Plaintiff alleges that these doctors performed surgery on him on December 15, 2009.  Plaintiff alleges that, as a result of the surgery, Plaintiff cannot breath out of his right nostril, his nose is crooked, his right eye waters, and he has poor vision in his right eye.  Plaintiff alleges that these doctors have advised him that they can perform

3

another surgery to correct these problems, but that they have not done so yet.

Plaintiff alleges that he now suffers constant pain in his face, head, and left shoulder.

Plaintiff alleges (1) that his warrantless arrest was unreasonable in violation of the Fourth Amendment; (2) that the arresting officers used excessive force in connection with the arrest; (3) that the use of racial epithets against him during the beating was a violation of the Equal Protection Clause of the Fourteenth Amendment; (4) that Defendants Millville Police Department and Police Chief Edmond Grennon are vicariously liable to him for the failure to train and supervise the arresting officers, in connection with the use of racial epithets, the warrantless arrest, the use of excessive force in arrest, and the failure to obtain prompt medical care; (5) that the arresting officers violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to obtain prompt medical care for him on the date of his arrest; (6) that Defendant Cumberland County Jail violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to obtain prompt medical care for him; (7) that Defendant Sheriff Robert A. Austino is vicariously liable to him for failure to train and supervise Defendant Cumberland County Jail with respect to his need for prompt medical care; (8) that Defendant South Jersey

4

Healthcare Regional Medical Care Center violated his Eighth
Amendment rights by refusing to treat him; and (9) that Defendant
Drs. Brian M. Smith, H. Dexter Barber, Joseph P. Mulligan, and
Manolis G. Manolakakis violated his Eighth Amendment rights by
failing to provide Plaintiff with prompt follow-up attention
after his surgery.

Plaintiff seeks injunctive relief, compensatory damages, and
punitive damages.

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time,
certain <u>in</u> <u>forma</u> <u>pauperis</u> and prisoner actions that are
frivolous, malicious, fail to state a claim, or seek monetary
relief from a defendant who is immune from such relief.  <u>See</u> 28
U.S.C. § 1915(e)(2) (<u>in</u> <u>forma</u> <u>pauperis</u> actions); 28 U.S.C.
§ 1915A (actions in which prisoner seeks redress from a
governmental defendant); 42 U.S.C. § 1997e (prisoner actions
brought with respect to prison conditions).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United
States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the plaintiff." <u>Morse v. Lower</u> <u>Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United</u> <u>States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson</u> <u>v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007)

(citations omitted).  See also Phillips v. County of Allegheny,

515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to

read Twombly so narrowly as to limit its holding on plausibility

to the antitrust context").

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of any civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>> (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; and
>> (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252

Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th

Cir. 2007).

In actions involving multiple claims and multiple

defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the
> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,

Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be

liberally construed in the interest of convenience and judicial

economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002).

However, the policy of liberal application of Rule 20 is not a

license to join unrelated claims and defendants in one lawsuit.

See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir.

9

2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007); <u>Coughlin v.</u>
<u>Rogers</u>, 130 F.3d 1348 (9th Cir. 1997).

Where a complaint can be remedied by an amendment, a
district court may not dismiss the complaint with prejudice, but
must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34
(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d
Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u>
<u>v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg</u>
<u>County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48

(1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   Claim for False Arrest

Plaintiff alleges that Sergeant John Doe and Officers John Doe 1 through 10 entered his home at 12:30 a.m. and arrested him without a warrant.

Under the Fourth Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643 (1961), the people are to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, ... and no Warrants shall issue, but upon probable cause."

Supreme Court cases construing the Fourth Amendment "reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was a reasonable ground for making the arrest." United States v. Watson, 423 U.S. 411, 418 (1976) (referring to arrest in a public place).  "The necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." Id. at 417.

"Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (citations omitted).

Thus, a warrantless public arrest by a law enforcement officer is reasonable under the Fourth Amendment "where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152-53 (2004).[3] See also Mayrland v. Pringle, 540 U.S. 366, 370 (2003) (validating warrantless public arrest for a felony); Atwater v. Lago Vista, 532 U.S. 318, 354 (2001) ("If an officer has probable

---

[3] It is well established in the Third Circuit that an arrest without probable cause is a Fourth Amendment violation actionable under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989)(citing cases); see also, Albright v. Oliver, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures). Under New Jersey law, false arrest has been defined as "the constraint of the person without legal justification." Ramirez v. United States, 998 F. Supp. 425, 434 (D.N.J. 1998) (quoting Fleming v. United Postal Service, Inc., 604 A.2d 657, 680 (N.J. Law Div. 1992)). To state a Fourth Amendment claim for false arrest, a plaintiff must allege two elements:  (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); United States v. Watson, 423 U.S. 411 (1976) (arrest warrant is unnecessary for arrest in a public place and such arrest is tested only by the "probable cause" test); United States v. Santana, 427 U.S. 38, 42 (1976) (person standing in the doorway of a house is "in a 'public' place," and hence subject to arrest without a warrant). See also Porter v. Gray, 2007 WL 464694, *6 n.7 (W.D. Pa. Feb. 13, 2007) (collecting cases on "public places").

However, "the Fourth Amendment has drawn a firm line at the entrance to a house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton v. New York, 445 U.S. 573, 590 (1980).  Exigent circumstances include "hot pursuit of a fleeing felon, or imminent destruction of evidence, ... or the need to prevent a suspect's escape, or the risk of danger to the police or to the other persons inside or outside the dwelling." Minnesota v. Olson, 495 U.S. 91, 100 (1990).

Here, Plaintiff's claim that certain police officers entered his home and arrested him without a warrant is sufficient to proceed past this initial screening stage.

B.   <u>Claim for Excessive Force in Arrest</u>

Plaintiff alleges that the defendant police officers also beat him in the course of handcuffing him and after handcuffing him, to the extent that his injuries have required surgery and have resulted in lasting pain.

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable."  <u>Brower v. County of Inyo</u>, 489 U.S. 593, 599 (1989), <u>quoted in</u> <u>Abraham v. Raso</u>, 183 F.3d 279, 288 (3d Cir. 1999).  <u>See also</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard").

A seizure triggering Fourth Amendment protection occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n.16 (1968).

To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." <u>United States v. Place</u>, 462 U.S. 696, 703 (1983), <u>quoted in</u>

14

Tennessee v. Garner, 471 U.S. 1, 8 (1985) and Graham v. Connor,
490 U.S. 386, 396 (1989).  Proper application of this objective
reasonableness standard "requires careful attention to the facts
and circumstances of each particular case, including the severity
of the crime at issue, whether the suspect poses an immediate
threat to the safety of the officers or others, and whether he is
actively resisting arrest or attempting to evade arrest by
flight."  Graham v. Connor, 490 U.S. at 396; quoted in Groman v.
Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).
Ultimately, "the question is whether the officers' actions are
'objectively reasonable' in light of the facts and circumstances
confronting them, without regard to their underlying intent or
motivation."  Graham, 490 U.S. at 397.

Plaintiff's allegations are sufficient to permit this claim
of excessive force in connection with his arrest to proceed.

C.   Equal Protection Claim

Plaintiff alleges that the arresting officers violated his
right to equal protection under the Fourteenth Amendment by using
racial epithets, repeatedly, during his arrest.[4]

The Equal Protection Clause of the Fourteenth Amendment
commands that no State shall "deny to any person within its
jurisdiction the equal protection of the laws," which is
essentially a direction that all persons similarly situated

---

[4] Plaintiff has alleged that he is African-American.

should be treated alike.  City of Cleburne, Texas v. Cleburne
Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe,
457 U.S. 202, 216 (1982); Artway v. Attorney General of New
Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping
language, though, "[t]he Equal Protection Clause does not forbid
classifications.  It simply keeps governmental decisionmakers
from treating differently persons who are in all relevant
respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

    To succeed on an equal protection claim based upon racial
discrimination, a plaintiff must allege that he is a member of a
protected class, that the defendant intended to discriminate, and
that the plaintiff suffered disparate impact based upon race.
See Village of Arlington Heights v. Metropolitan Housing
Development Corp., 429 U.S. 252, 264-66 (1977); Washington v.
Davis, 426 U.S. 229, 242, 244-45 (1976); City of Cleburne, 473
U.S. at 439-40; Plyler v. Doe, 457 U.S. 202, 216-17 (1982); Price
v. Cohen, 715 F.2d 87, 91-92 (3d Cir. 1983), cert. denied, 465
U.S. 1032 (1984).

    While the use of racial epithets, alone, during the course
of an arrest does not amount to an equal protection violation,
the use of racial epithets in connection with other conduct that
deprives an arrestee of constitutional rights may amount to an
equal protection violation.  See, e.g., Williams v. Kaufman Co.,
352 F.3d 994, 1013 & n.60 (5th Cir. 2003); Williams v. Bramer,

16

180 F.3d 699 (5th Cir. 1999); Johnson v. Morel, 876 F.2d 477 (5th Cir. 1989); Carroll v. Village of Homewood, 2001 WL 1467708 (N.D. Ill. 2001).

Here, Plaintiff has alleged that the same individuals who used racial epithets during his arrest also arrested him, in his home, without a warrant and with excessive force, alleged violations of the Fourth Amendment.  Accordingly, this Equal Protection claim may proceed against the arresting officers, Sergeant John Doe and John Does 1 through 10.

D.   Claims Failure to Obtain Medical Care

Plaintiff alleges that his Eighth Amendment rights were violated when the arresting officers failed to obtain prompt medical treatment and, again, when Defendant Cumberland County Jail failed to obtain prompt medical treatment.

As Plaintiff was an arrestee at the time of the events complained of, his claims must be analyzed pursuant to the Fourteenth Amendment Due Process Clause, which protects pre-trial detainees, rather than under the Eighth Amendment, which protects convicted and sentenced prisoners.  See Hubbard v. Taylor, 399 F.3d 150  (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).

1.   Claims against the arresting officers

Analysis of whether a pre-trial detainee or unsentenced prisoner has been deprived of liberty without due process is

17

governed by the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979). <u>Hubbard</u>, 399 F.3d at 157-60, 164-67; <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees. ...

441 U.S. at 535-39 (citations omitted). The Court further explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention
facility.  "Restraints that are reasonably related to the
institution's interest in maintaining jail security do not,
without more, constitute unconstitutional punishment, even if
they are discomforting and are restrictions that the detainee
would not have experienced had he been released while awaiting
trial."  441 U.S. at 540.  Retribution and deterrence, however,
are not legitimate nonpunitive governmental objectives.  441 U.S.
at 539 n.20.  Nor are grossly exaggerated responses to genuine
security considerations.  Id. at 539 n.20, 561-62.

Here, the allegations that the arresting officers inflicted
serious injuries on Plaintiff then left him without medical care
for several hours states a claim under the Due Process Clause
sufficient to avoid dismissal at the screening stage.

2.  Claims against Cumberland County Jail

The same Bell v. Wolfish standards would apply to claims
that Plaintiff was deprived of prompt medical attention while
confined at Cumberland County Jail.

However, a jail is not a "person" amenable to suit under 42
U.S.C. § 1983.  See Marsden v. Federal BOP, 856 F. Supp. 832, 836
(S.D.N.Y. 1994) (county jail not an entity amenable to suit under
42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F. Supp. 757,
758 (N.D. Ill. 1993) (Cook County Jail not a "person" under
§ 1983); McCoy v. Chesapeake Correctional Center, 788 F. Supp.

19

890, 893-94 (E. D. Va. 1992) (local jail not a "person" under §
1983); Vance v. County of Santa Clara, 928 F. Supp. 993, 995
(N.D. Cal. 1996) (county department of corrections is an agency
of the county and cannot be sued separately from the county under
§ 1983); Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)
(county department of corrections not a suable entity separate
from the county).  Accordingly, the claims against Cumberland
County Jail will be dismissed.

E.   Claims for Failure to Train

     Plaintiff alleges claims for vicarious liability and for
failure to train against the Millville Police Department and
Chief Grennon, based upon the events surrounding the arrest and
failure to obtain prompt medical care, and against Defendant
Sheriff Robert A. Austino for failure to train and supervise
Defendant Cumberland County Jail.

     Local government units and supervisors are not liable under
§ 1983 solely on a theory of respondeat superior.  See City of
Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v.
New York City Department of Social Services, 436 U.S. 658, 690-
91, 694 (1978) (municipal liability attaches only "when execution
of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent
official policy, inflicts the injury" complained of); Natale v.
Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d

20

Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat</u> <u>superior</u>. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom."  <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990), <u>quoted in</u> <u>Blanche Rd. Corp. v. Bensalem Twp.</u>, 57 F.3d 253, 269 n.16 (3d Cir.), <u>cert. denied</u>, 516 U.S. 915 (1995), and <u>quoted in</u> <u>Woodwind Estates, Ltd. v. Gretkowski</u>, 205 F.3d 118, 126 (3d Cir. 2000).  A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. <u>Monell</u>, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict."  <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate

21

decisionmaker," but that is "so widespread as to have the force of law."  [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Plaintiff has alleged no facts suggesting the existence of any policy or practice that would justify imposing municipal or supervisory liability in connection with the events described in the Amended Complaint.

Nor has Plaintiff alleged facts sufficient to state a claim for failure to train or supervise.

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," City of Canton v. Harris, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable, Id.

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program.  ...  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training ... .  Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

Id. at 390-91.

Here, Plaintiff alleges nothing more than that a particular corrections officer, or group of officers, caused him an injury, plainly an insufficient allegation upon which to base liability for failure to train or supervise.  Accordingly, Plaintiff's failure to train or supervise claims must be dismissed for failure to state a claim.

F.  Claims for Allegedly Defective Medical Care

Plaintiff alleges that Defendant South Jersey Healthcare Regional Medical Care Center violated his Eighth Amendment rights by refusing to treat him, and that Defendant Drs. Brian M. Smith, H. Dexter Barber, Joseph P. Mulligan, and Manolis G. Manolakakis violated his Eighth Amendment rights by failing to provide Plaintiff with prompt follow-up attention after his surgery. Again, as Plaintiff was a pre-trial detainee at the time of the events complained of, Plaintiff's claims must be analyzed under

23

the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment.

Private parties may be liable under § 1983 only when they have acted under color of law.  Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir.), cert. denied, 516 U.S. 858 (1995) (quoting Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978)). The "under color of state law" requirement of 42 U.S.C. § 1983 has been treated identically to the "state action" requirement of the Fourteenth Amendment.  See Mark, 51 F.3d at 1141 (citing United States v. Price, 383 U.S. 787, 794 n.7 (1966); Lugar v. Edmondson Oil Co., 457 U.S. 922, 928 (1982); Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)).  State action exists under § 1983 only when it can be said that the government is responsible for the specific conduct of which a plaintiff complains.  Mark, 51 F.3d at 1141-42.  "Put differently, deciding whether there has been state action requires an inquiry into whether 'there is a sufficiently close nexus between the State and the challenged action of [the defendants] so that the action of the latter may fairly be treated as that of the State itself.'"  Id. at 1142 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

A private entity can be sued under § 1983 where (1) it "has exercised powers that are traditionally the exclusive prerogative of the State, Mark, 51 F.3d at 1142; (2) the State and the

24

private party act in concert or jointly to deprive a plaintiff of his rights, <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 170-171 (1970); (3) the State has permitted a private party to substitute his judgment for that of the State, <u>Cruz v. Donnelly</u>, 727 F.2d 79, 81-82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, <u>Edmonson v. Leesville Concrete Co., Inc.</u>, 500 U.S. 614, 620 (1991); <u>Mark</u>, 51 F.3d at 1143.  See <u>also</u> <u>DeShaney v. Winnebago County Dept. of Social Services</u>, 489 U.S. 189 (1989) (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure that the State protected them from each other"); <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 835 (9th Cir. 1996) ("Individuals . . . have no right to be free from infliction of [constitutional] harm by private actors"), <u>cert</u>. <u>denied</u>, 519 U.S. 1111 (1997); <u>Jones v. Arbor, Inc.</u>, 820 F. Supp. 205, 208 (E.D. Pa. 1993) (plaintiff did not allege that defendant corporation was a state actor or had such a symbiotic relationship with the state so as effectively to be an instrumentality of the state).

Here, Plaintiff has failed to allege <u>any</u> facts suggesting that the defendants who participated in (or refused to participate in) his medical care could be considered "state actors," liable under § 1983.  Accordingly, the constitutional claims against these defendants will be dismissed.

25

G.     The Application for Appointment of Counsel

On June 18, 2010, this Court received Plaintiff's Application [6] for appointment of counsel.  Plaintiff alleges that he requires the appointment of counsel because he is raising claims regarding medical care and because he anticipates that the defendants will try to "swamp" him with paperwork to delay the matter.  He does not allege that he has made any attempt to locate counsel prior to making this application to the court.

Indigent persons raising civil rights claims have no absolute constitutional right to counsel.  Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to appoint counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and law. ... If the district court determines that the plaintiff's claim has some merit, then the district court should consider the following factors:
>
>      (1) the plaintiff's ability to present his or her own case;
>      (2) the complexity of the legal issues;
>      (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
>      (4) the amount a case is likely to turn on credibility determinations;
>      (5) whether the case will require the testimony of expert witnesses;
>      (6) whether the plaintiff can attain and afford counsel on his own behalf.
>
> [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).]  This list of factors is not exhaustive, but instead should serve as a guide post for the district courts.

26

> Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases. Id. at 157.

Parham, 126 F.3d at 457-58.

In considering the first factor, courts should consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience." Tabron, 6 F.3d at 156. In addition, courts should consider whether the plaintiff has access to resources such as a typewriter, photocopier, telephone, and computer. Id.

"Where the legal issues are complex, it will probably serve everyone involved if counsel is appointed." Parham, 126 F.3d at 459 (citing Tabron, 6 F.3d at 156 and Maclin v. Freake, 650 F.2d 885, 889 (7th Cir. 1981) (per curiam) ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.")).

In considering the ability of a plaintiff to investigate the facts, courts "should be aware that it may be difficult for indigent plaintiffs to understand the complex discovery rules." Parham, 126 F.3d at 460.

In considering the credibility factor, "courts should determine whether the case was solely a swearing contest." Parham, 126 F.3d at 460.

27

The necessity of an expert witness "weighs heavily in favor of appointment of counsel." Parham, 126 F.3d at 460.  Finally, where other factors weigh in favor of appointment of counsel, evidence that a plaintiff has made extensive unsuccessful efforts to obtain counsel weighs heavily in favor of appointment. Parham, 126 F.3d at 461.

Analysis of these factors reveals that appointment of counsel is not appropriate at this time.  As a preliminary matter, Plaintiff has presented certain claims with sufficient merit, in fact and in law, to avoid dismissal at the screening stage.  However, Plaintiff has alleged only that the medical issues are complex and that he is fearful that he will be "swamped" with paperwork.  The latter issue is completely speculative.  And it is too soon to determine how complex the medical issues are.  In light of Plaintiff's failure to make a complete application, and as the issues are not yet joined, the Application will be denied without prejudice to Plaintiff or the Court revisiting the issue in the future should circumstances warrant.

## V.   CONCLUSION

For the reasons set forth above, this action will be permitted to proceed only in part.  Certain claims will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.

An appropriate order follows.


At Camden, New Jersey              /s/ NOEL L. HILLMAN
                                   Noel L. Hillman
                                   United States District Judge

Dated:  JULY 27, 2010